Territory of New Mexico v. Stokes and Mullen.

disregards this rule, its action ought not to be held binding on this court.

In this case the killing was admitted, and the only question was as to the degree of the defendant's guilt. Upon this question the verdict of the jury was, as I think, against the weight of the evidence.

*Second.* The practice of asking the defendant, after conviction, if he has anything to say why sentence should not be pronounced against him, is founded in justice, reason and humanity. It is sanctioned by long and almost immemorial usage, and should be considered too well settled to be shaken by these cases in which it has been held unnecessary. It should be held both in the theory and practice, a sacred right for a man convicted of murder and about to be sentenced to an infamous death, to be heard before he is sentenced. In this case this right was not recognized.

*Third.* With this view of the law and in view of the state of things at present existing in this territory, I am not willing that this man's fate should depend upon the very uncertain action of any governor, no matter how high may be his qualifications and character.

For these reasons I am unable to concur in the opinion of the majority of the court.

The Territory of New Mexico v. Joseph Stokes and William Mullen.

*January 28, 1881.*

Burglary. (1) *Prosecution for, under general railroad law.*

1. The general railroad act, ch. 1, tit. 8, section 8, provides that "any person who shall in the day or night time enter by force, or otherwise, any car of any corporation, formed under this act, with intent to steal any valuable thing then and there being, shall be deemed

guilty of burglary, and upon conviction thereof shall be punished as in other cases of burglary." This provision applied only to corporations created under this general act, but subsequently the legislature passed an act conferring upon all corporations organized before the passage of the general railroad law, "all the powers, *privileges* and exemptions conferred upon corporations organized" under that act. Upon the theory that the "privileges" thus conferred would give to corporations formed before the passage of the general railway law, the "privilege" of being protected from burglary in the means provided by the section of the general law quoted above, the defendants were indicted under section 8, ch. 1, tit. 8 of the general railroad act for burglarizing the cars of the N. M. & S. P. R. R. Co., a company organized before the general railroad statute was passed.

*Held,* That the word "privilege," as used in the second act, does not confer the right to prosecute any one for burglary under section 8 of the general railroad act, ch. 1, tit. 8, where the burglary was of cars owned by a company organized before the general act was passed; but that the defendants could be prosecuted under the criminal code of New Mexico.

Appeal from the District Court for Santa Fe county. PRINCE, J.

The defendants in this case were indicted by the grand jury of San Miguel county for burglary under sec. 8, chap. 1, title 8 of an act, entitled "An act to provide for the incorporation of railroad companies and the management of the affairs thereof, and other matters relating thereto," approved February 2d, 1878 (Laws of 1878, p. 43).

Change of venue was taken to Santa Fe county, and the cause tried at the July term, 1880, of the district court at Santa Fe county.

After the evidence was in, defendants, by their counsel, moved the court to instruct the jury to find a verdict of "not guilty," for the reason that the territory had not shown that the defendants entered by force, or otherwise, any car of any corporation formed under the act of the legislature of New Mexico, approved February 2d, 1878, which motion the court overruled, and defendants duly excepted.

There was a' verdict of guilty, and motions in arrest of judgment and for new trial were filed in due time.

The bill of exceptions shows that no evidence whatever was introduced on the part of the prosecution to prove that the New Mexico and Southern Pacific Railroad Company (whose car defendants were charged with entering) was organized under the act of February 2d, 1878, above mentioned, and that the court admitted in evidence, against the objection of defendants, a copy of certain articles of incorporation, set forth in the record, pp. 19 to 28.

*P. F. Conway* and *C. H. Gildersleeve* for appellants.

I.—Appellants claim that the court below erred in admitting in evidence the articles of incorporation above mentioned, and in refusing to instruct the jury to acquit.

An examination of the record (pp. 19 to 28), will show that the articles of incorporation introduced by the prosecution are not drawn in accordance with the provisions of the act entitled "An act to provide for the incorporation of railroad companies and the management of the affairs thereof, and other matters relating thereto," approved February 2d, 1878 (Laws of 1878, p. 17).

Sub-head 10, of sec. 2, title 1, chap. 1 of said act (p. 18, Laws of 1878), provides that articles of incorporation must set forth "that at least ten per cent. of its capital stock subscribed has been paid to the treasurer of the intended corporation, giving his name and residence." Section 4, same title and chapter of said act (p. 18, Laws of 1878), provides that, before filing articles of incorporation, the incorporators must have actually subscribed to the capital stock of the corporation at least one thousand dollars for each mile of its road and branches, and at least ten per cent. thereof must have been paid for the benefit of the corporation to a treasurer appointed by subscribers to articles of incorporation.

Section 5, same chapter and title of said act (p. 19, Laws of 1878), is as follows: "There must be securely attached

to said articles of incorporation an affidavit of the treasurer named therein, that the requisite amount of capital stock of the intended corporation has been actually subscribed, and that ten per cent. thereof has been actually paid to him for the benefit of said corporation, stating the amount of stock subscribed, and the amount actually paid in."

The articles of incorporation admitted by the court below do not comply in any manner with the provisions of the statute last above quoted, and consequently the New Mexico and Southern Pacific Railroad Company is not a corporation formed under the provisions of the act of Feb. 2d, 1878. Section 8, title 8, chap. 1 of said act (p. 43, Laws of 1878), reads as follows: " Any person who shall in the day or night time, enter by force or otherwise, any car of any corporation, formed under this act, with intent to steal any valuable thing there and then being, shall be deemed guilty of burglary, and upon conviction thereof, shall be punished as in other cases of burglary."

There can be no doubt that the indictment in this case was brought under this section, and in view of the failure of the incorporators of the New Mexico and Southern Pacific Railroad Company to comply with the provisions of this law in framing their articles of incorporation, it is plain that the objection of defendants to the introduction of said articles of incorporation was well taken, and that the court should have given the instruction to the jury to find the defendants not guilty as prayed for in their motion.

II. The action of the court below in admitting said articles of incorporation, and refusing to instruct the jury to acquit, was based upon section 1 of an act entitled " An act in reference to certain incorporated companies in the territory of New Mexico," approved Feb. 12th, 1878 (Laws of 1878, p. 52). We claim that this section cannot be so construed.

It provides that all powers, privileges and exemptions con-

ferred on corporations organized under the act of Feb. 2d, 1878, are also conferred on corporations organized for railroad purposes under the general incorporation law of Dec. 27th, 1867 and Jan. 30th, 1868. Section 8 of the act of Feb. 2d, 1878, under which the indictment is brought, confers no power, privilege or exemption upon a railroad company. It is an act of the sovereign declaring certain acts to be a crime of a nature different from what it was before, or rather making that a crime which was not prior to the passage of the law. It is in derogation of the common law, and should be strictly construed.

The words, powers, privileges and exemptions, used in the act approved Feb. 12th, 1878, Laws of 1878, p. 52, have no reference to sec. 8, title 8, chap. 1, act of Feb. 2d, 1878 (Laws of 1878, p. 43). The first thing requisite in the construction of an act of the legislature is to discover what is the intention of the legislature.

Let us see what was meant and intended by the legislature in the use by it of these words, powers, privileges and exemptions.

Fortunately for the purposes of this inquiry, the legislature has not left its meaning dark or obscure; the powers, privileges and exemptions meant and intended by the act of Feb. 12th, 1878, are set forth at large and in the utmost minutiæ of detail, in the act of Feb. 2d, 1878.

*First.* As to powers, see title 6, chap. 1 of act approved Feb. 2d, 1878 (pp. 31 to 39, Laws of 1878); there they are defined to be the power of succession by its corporate name, to sue, and be sued in court, to make and use a common seal, and alter the same at pleasure, to acquire, purchase, hold and convey real estate, and so on to the end of the chapter.

*Second.* As to privileges and exemptions, see title 9, chap. 1, secs. 1 to 10 inclusive, of act approved Feb. 2d, 1878 (Laws 1878, p. 49).

The powers, privileges and exemptions meant are all

referred to and defined in the sections above quoted, but no-. where among them do we find any reference to the section of the same act defining the offense of burglary; but this section is found under its proper heading : " Regulation and Management." The conclusion seems most reasonable, that the legislature referred to the powers, privileges and exemptions specifically granted, and not to the section defining a criminal offense.

" The section of the statute under which the indictment is brought is in derogation of the common law, and to be strictly construed :" *Melody v. Reab,* 4 Mass., 471 ; *Gibson v. Jenney,* 15 Mass., 205 ; *Duelly v. Duelly,* 46 Me., 377.

" Penal statutes are to be taken strictly and literally, and cannot be extended by construction :" *U. S. v. Starr,* 1 Hempst., 469 ; *Andrew v. U. S.,* 2 Story, 202 ; *Ranson v. Starr,* 19 Conn., 292.

" When the liberty of the citizen is involved statutes should be strictly construed :" *Case of Pierce,* 16 Me., 255; *Elam v. Ransom,* 21 Ga., 139 ; *Ramsey v. Foy,* 10 Ind., 493.

" An offense cannot be created or inferred by vague implications. Penal laws must be construed strictly, but not so strictly as to defeat the obvious intention of the lawmaker ; but so strictly that the case in hand must be brought within the definitions of the law that is within its reach, taken in their ordinary significance :" *Atlanta v. White,* 33 Ga., 229.

We submit that, in view of the foregoing, the law of Feb. 12th, 1878, does not bring railroad companies not organized under the law of February 2d, 1878, within the operation of the section defining burglary here sought to be invoked, and that the court below erred in the admission of the testimony complained of and in overruling the motions for new trial, and in arrest of judgment.

The act of February 12th, 1878, attempts only to confer certain " powers, privileges and exemptions" on railroad cor-

porations, and does not in any manner pretend or assume to confer on the territory the right of prosecution for any new character of statutory crime.

The act of February 12th, 1878, is wholly and totally null and void; it attempts to confer on railroad corporations organized previous to February 2d, 1878 (to wit, under the law of December 27th, 1867, and the act of January 30th, 1868, amendatory thereto), all the "powers, privileges and exemptions" conferred on railroad corporations, and for the management of the affairs hereof, by the act approved Feb. 2d, 1878, and hence is in violation of the act of congress, June 10th, 1872, Revised Statutes U. S., sec. 1889, p. 333, which says that "legislative assemblies of the several territories shall not grant private charters or especial privileges," etc.

This act of February 12th, 1878, attempts to grant an especial privilege, and to grant the same especially to railroad corporations, organized for railroad purposes.

It attempts to grant, especially to certain railroad corporations organized previous to a certain date (February 2d, 1878), "powers, privileges and exemptions" that other railroad companies, organized under the same act, but subsequent to that date cannot enjoy.

It not only attempts to grant that especial privilege, but to grant the same especially to railroad corporations organized previous to February 2d, 1878.

Which is an exercise of legislative power clearly not vested in the legislature of the territory of New Mexico; said act of February 12, 1878, is hence null and void.

*Catron & Thornton,* for appellee.

There is no error on the record in this case. The indictment is for burglary in entering a car of the New Mexico & Southern Pacific Railroad Company, with intention to steal its property, etc.

The defendants pleaded not guilty to the indictment, but

made no objections to its form or sufficiency. They were found guilty, and sentenced.

The bill of exceptions contains a statement of the judge as to evidence on a certain point, then sets out certificate of incorporation in full, which was given in evidence as stated, but does not pretend to give all the evidence.

The statement in the "bill of exceptions," that there was no evidence introduced to show that the N. M. & S. P. R. R. Co., was organized under the act of Feb. 2, 1880, is an attempt of the judge to forestall this court, and decide a matter pertinent to the issue.

This court cannot examine into the fact whether the evidence sustained the indictment or not, as all the evidence is not inserted in the bill of exceptions, without which it cannot pass on a question of fact: U. S. Digest, vol. 6, sec. 308, p. 14; *Id.*, sec. 346, p. 19; U. S. Digest, vol. 6, sec. 437, p. 20; *Id.*, sec. 450; 10 Ill., p.

The bill of exceptions does not show the reason for the objections made to the introduction of testimony. See 37 Missouri, p. 358.

If the case comes under the law referred to, still it is good, as the exemption from robbery, and the privilege to keep and use cars free from robbers and armed bands, and the right to immunity from them will extend these provisions to the old companies.

A privilege is a right to an immunity or protection in something, or some right.

Criminal law is nothing more than a protection of persons in their rights, privileges and immunities.

It is the privilege of every citizen to insist on his rights and protection, and to defend himself, either personally, or by means of the law, punishing persons who injure him in the enjoyment of his rights.

There being no error apparent on the record, the court must sustain the sentence.

PARKS, Associate Justice: The defendants in this case were indicted at the last October term of the San Miguel district court for committing burglary in a baggage and express car of The New Mexico and Southern Pacific Railroad Company, on the fourteenth day of said month of October last. The case was taken to Santa Fe county by change of venue; was tried there, defendants found guilty and sentenced, and the case brought to this court by appeal.

There is no general law of this territory making the acts charged against the defendants burglary, or by which they could be punished under this indictment. The ground taken by the prosecution in this case is, substantially, that this indictment was founded upon and must and can be sustained by the eighth section of title eighth of the railroad laws passed February 2d, A. D. 1878, taken in connection with section first of the act upon the same subject of February 12, A. D. 1878.

Section eighth aforesaid defines the crime of burglary in any case of any corporation formed under that act, and fixes the punishment, and section one of the said subsequent act confers all the powers, privileges and exemptions of the said first act upon all the corporations incorporated under the laws of this territory for the purpose of constructing railroads, etc.

It was stated in the beginning of the argument, and it is evident from the record and the argument of counsel, that this case depends upon the meaning of the word "privileges" in the act of February 12, 1878.

According to Jacob's Law Dictionary, the original legal meaning of the word "privilege" is exemption of a private man or a particular corporation from the rigor of the common law. Another definition given by him is, exemption from some duty, burden or attendance. Bouvier says a privilege is a particular law which grants special prerogatives to some persons contrary to common right. Webster defines it

to be immunity, franchise, right, claim, liberty, special exemption from evil or burden, special enjoyment of good, peculiar benefit or advantage.

Without multiplying authorities or definitions, it is sufficient to say that in no usual or proper or legal meaning of the word privileges can it be used as claimed in this case.

The right of the people of New Mexico to prosecute and punish wrong-doers under this, or any other law, is not a privilege of any particular person or persons, corporation or corporations.    It is something more than that.    It is part of the criminal law of the country, enacted for the public good ; for the punishment of crime, and in which the whole community are interested.    We are of the opinion that there is no law of this territory under which this indictment, verdict and judgment can be sustained.

But it does not follow upon this opinion that acts such as are alleged to have been proved upon the trial of this case can be committed with impunity.

The criminal code of New Mexico is believed to be sufficiently comprehensive to punish all invasions of the rights of personal liberty, personal security, and private or public property.

What part or parts of that code are applicable to the alleged facts of this case, if any, it is not the province of this court either to determine or indicate.

The judgment of the district court is reversed.


PRINCE, Chief Justice, dissenting: In this case, being unable to agree with the conclusions of the majority of the court, I think it proper to put on record my reasons for such dissent.

There is no question raised as to the facts in the case, and the decision turns upon one single point, and that one of much importance and interest.

The defendants are indicted under sec. 8, of title 8, of

chap. 1 of the laws of 1878, commonly known as the General Railroad Act.  That section reads as follows : " Any person who shall, in the day or night time, enter by force or otherwise, any car of any corporation formed under this act, with intent to steal any valuable thing then and there being, shall be deemed guilty of burglary, and, upon conviction thereof, shall punished as in other cases of burglary."

The object of this law was very evident.  The criminal code of the territory contained provision concerning burglary in dwelling houses, offices, shops, warehouses, out-houses, colleges, churches, meeting houses, court houses, town houses, academies and other public buildings, in the day time or night time, and under almost all conceivable circumstances (General Laws, secs. 9 to 13, chap. 7), and these included every kind of structure, which, down to that time, had been capable of being burglariously entered, in New Mexico.

But a new era was approaching.  Railroads were being built almost to the boundaries of the territory, and it was hoped would soon enter its borders. . At that time, not a rail had been laid in New Mexico, but the legislature, wishing to encourage the introduction of the modern methods of travel, enacted this general railroad law, which is very elaborate and comprehensive in its provisions, and gives to companies organized thereunder such powers, privileges, franchises and immunities as were supposed to be necessary or desirable and consistent with the public welfare.  Among other privileges conferred was that of protection from robbery and depredation by burglars, by the enactment of the section above quoted.  Other similar privileges were those of protection from having their roads undermined by tunnels, etc., the digging of which was made a misdemeanor (sec. 10 of title 8); protection from having their structures, engines, etc., injured, or track obstructed, which was afforded by making such injuries misdemeanors, punishable by law (sec. 11, title

8); protection from claims on the part of passengers for damages for injuries in cases where they had violated the regulations of the road (sec. 7); protection from attempts to throw cars off the track, or cause collisions, which are made felonies by sec. 9.

· By section 1889 of the U. S. Revised Statutes, the legislature is prohibited from granting any " especial privileges " to any corporation or individual; but these privileges were included in a general act for the incorporation of railroad companies, intended not for the benefit of any one or more particular organizations, but for all that might exist in the territory, and thus were not obnoxious to the objection of being " especial." This act was passed on the 2d of February, 1878, but scarcely more than a day had elapsed, when it appeared that although there was no railroad actually built in New Mexico, yet there did exist one or more corporations for railroad purposes, which had been previously organized under the general incorporation act of 1868: General Laws, p. 203.

That act was comparatively brief, and did not confer the privileges of protection and immunity from violence and damage to which we have referred, as well as many other powers, privileges and exemptions; so that, unless legislative action were had, there would be two classes of railroad corporations—one possessing certain privileges and the other not. Besides, being manifestly unjust, this condition of affairs might also be construed as making these privileges " especial," which were thus confined to the corporations formed under a particular act, and of which other similar corporations were deprived, and thus be in contravention of the law of congress previously referred to, which prohibited the granting of said " especial privileges," and, consequently, void.

The legislature proceeded with great promptitude to obviate the difficulty, so that a bill, prepared for the purpose,

was introduced, went through all its stages of consideration and progress, was passed by both houses and signed by the governor, and filed in the secretary's office as a law, by the succeeding twelfth day of February, but ten days subsequent to the general railroad law. This remedial statute is chapter 3 of the Laws of 1878, and it reads as follows:

"SECTION 1. All the powers, privileges and exemptions conferred upon corporations organized under an act entitled ' An act to provide for the incorporation of railroad companies and the management of the affairs thereof, and other matters relating thereto,' approved February 2d, A. D. 1878, are hereby conferred upon all corporations incorporated under the laws of this territory for the purpose of constructing railroads, and also upon all corporations organized for railroad purposes that have registered in the office of the secretary of this territory the original or certified copy of their articles of incorporation, in accordance with an act entitled ' An act to amend an act entitled " An act to create a general incorporation law," permitting persons to associate themselves together as bodies corporate for mining, manufacturing and other industrial pursuits, and to repeal the sixteenth section of said act,' " approved January 30th, 1878: General Laws of New Mexico, p. 470.

The obvious intention of this statute was to place all the railroad companies organized under the laws of the territory upon the same footing; to permit no inequality of rights or privileges ; to allow no partiality towards those organized under any particular statute, but to bring about an entire uniformity and equality in their position before the law.

The privileges conferred by the act of February 2, 1878, were no longer to be " especial " to the companies organized thereunder, but were to be enjoyed generally and equally by all of similar character. Among the privileges were the high and important ones of protection from robbery, depredation and willful injury, to which we have already referred.

Can it not be supposed that it was not intended by the legislature, when it enacted this law of February 12, that these privileges of protection and immunity should be included among the privileges which were to be made general, and of which the older corporation were now to have the benefit equally with the newer?

Yet this is the sole question in this case. It is in proof that the New Mexico & Southern Pacific Railroad Company, one of whose cars was the scene of the burglary in question, was not incorporated under Chapter I of the Law of 1878, but under a prior incorporation act, and this was one of those referred to in Chapter III of that year, and for whose benefit and protection that act was passed. The point was raised, and it is held by the decision of the court just rendered that the offense was not cognizable by one law under the present indictment, because the car entered was not the property of a corporation organized under Chapter I; and that Chapter III does not remedy the difficulty by placing cars of the other corporations therein mentioned on the same footing as to the privilege of protection from burglars with cars of companies organized under Chapter I.

It may be that the legislature could have employed stronger and more apt words than it did to express its will, but I cannot concur in the opinion that the object is not substantially and legally attained by the language as it exists in Chapter III. The intention of the legislature is, to my mind, too plain to admit of doubt. It was obviously to place all similar corporations on the same basis, to give to one railroad company exactly the same powers, privileges and exemptions that every other similar company possessed within our territory; to prevent any inequality, discrimination or favoritism. This was not only right, but absolutely essential, in order to make the privileges conferred general, and therefore legal. It is not to be supposed that they intended that the protection afforded equally to those of

Territory of New Mexico v. Stokes and Mullen.

another, that it should be a crime punishable by a heavy penalty to enter one car in a train, with intent to steal, because that car happened to belong to one company, and no crime at all to enter the next car, with like intent, because that car unfortunately belonged to a different company. Yet that would be precisely the result if the legislature intended to make such a discrimination, and if the word "privileges" in the act of February 12, 1878 does not include the privilege of protection from burglary or other injury. Under this construction, while it is a misdemeanor to undermine the track of the Rio Grande, Mexico & Pacific Railroad, it is no offense similarly to endanger the property of the company and lives of passengers on the New Mexico & Southern Pacific Railroad. It is a felony to place an obstruction on the track of one, with intent to throw the train off; or to displace a switch with intent to cause a collision—a felony for which the offender can be imprisoned for ten years—and no statutory offense at all to do a like deed to the other. The defendants now before us under the indictment in this case were felons if the car which they happened to try to rob belonged to one, and not guilty if it belonged to the other.

This would be, in my opinion, the height of injustice and inequality. The privilege of protection in the one case would be in the greatest degree "especial." Let us suppose the two roads ran in the same direction, and were opposed to each other in interest; would not that one have a very "especial privilege" over the other, and reap its benefits in passengers and freight, which received the privilege of protection from robbers, from underminers and train-wreckers?

Believing that the words of the act of February 12 conferred this protection and immunity from danger upon the New Mexico & Southern Pacific Railroad to which the car entered in this case belonged, I am compelled to dissent from the views of the majority of the court, in reversing the judgment herein.